IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN F. KIRVEN, | ) | CASE NO. 5:12 CV 1727 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Brian F. Kirven, for disability insurance benefits and supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Kirven had severe impairments consisting of depressive disorder, social anxiety disorder, obsessive-compulsive disorder ("OCD"), and attention deficit hyperactivity disorder ("ADHD").[1] The ALJ made the following finding regarding Kirven's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He should avoid concentrated exposure to unprotected heights and moving machinery. The claimant is also limited to simple, routine, repetitive tasks

---

[1] Transcript ("Tr.") at 26.

performed in a work environment free of fast-paced production requirements, and involving only simple work related decisions and routine work place changes. Further, the claimant is limited to only occasional contact with the public, supervisors, and co-workers.[2]

Given that RFC, the ALJ decided that Kirven could perform his past relevant work.[3] The ALJ made an alternative finding at step five of the sequential evaluation process, based on a vocational expert's testimony, that a significant number of jobs existed nationally that Kirven could perform with his RFC.[4] The ALJ, therefore, found Kirven not under a disability.[5]

Kirven asks for judicial review and reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Kirven presents two issues for decision on judicial review:

- The ALJ made no finding of whether or not the opinions of Kirven's treating psychiatrist should receive controlling weight. He assigned those opinions some or little weight because of consistency or inconsistency with treatment notes. Did the ALJ properly analyze and articulate as to these opinions?

- The ALJ found Kirven's statements about his impairments and limitations not credible to the extent inconsistent with the RFC finding. Does substantial evidence support this finding?

---

[2] *Id.* at 29.

[3] *Id.* at 32

[4] *Id.* at 33-34.

[5] *Id.* at 34.

-2-

After briefing, I conducted a telephonic oral argument on the record, and a transcript of that argument has been prepared and filed.[6]

For the reasons fully set forth below, I recommend that the case be remanded for an ALJ's reconsideration of the findings of the weight properly assigned to the treating psychiatrist's opinions and of Kirven's credibility and for proper articulation of the reasons supporting those findings, consistent with the regulations and applicable case law of the Sixth Circuit.

## Relevant Record Evidence and Administrative Findings

The primary issue for decision involves the ALJ's handling of three evaluations done by the treating psychiatrist, Pradeep Manudahane, M.D.[7]

Dr. Manudahane provided the first evaluation on a mental status questionnaire sent to the Bureau of Disability Determination, dated April 24, 2009. In that evaluation, he diagnosed Kirven with OCD, social anxiety disorder, and depressive disorder, which had existed for a duration of 25 years.[8] He described Kirven's mental status as follows:

- • Mood and effect – initially depressed and anxious but recently improved,

- • Signs, symptoms, and severity of anxiety – social anxiety and compulsive behaviors, washes hands frequently;

---

[6] ECF # 28, Transcript of the Oral Argument of April 16, 2013 ("4/16/13 Tr.").

[7] 4/16/13 Tr. at 3.

[8] Tr. at 345.

- Thinking disorders – no thought disorders;

- Cognitive functioning – concentration and memory normal; and

- Insight and judgment and other behaviors – insight fair, judgment fair, no substance problems, no illegal behaviors.[9]

He then went on to evaluate Kirven's functioning in several domains:

- Remember, understand, and following directions – good;

- Maintain attention – good;

- Sustain concentration, persistence at task, and complete them in a timely fashion – fair;

- Social interaction – diminished;

- Adaptation – normal; and

- Patient's reaction to pressures in work settings or elsewhere involving simple, routine, or repetitive tasks – good.[10]

Almost a year later, on February 5, 2010, Dr. Manudahane completed an assessment of Kirven's ability to do work-related activities.[11] To the diagnoses given in the earlier evaluation, he added ADHD.[12] Dr. Manudahane rated Kirven markedly limited in every domain.[13] He noted that Kirven's medication had resulted in only slight improvement and

---

[9] *Id.* at 344.

[10] *Id.* at 345.

[11] *Id.* at 395-96.

[12] *Id.* at 396.

[13] *Id.*

-4-

that his impairments would cause him to be absent from work more than three times a month.[14]

Dr. Manudahane completed another assessment of ability to do work-related activities on April 13, 2010.[15] This evaluation rated Kirven's limitations as moderate in two domains, marked in six domains, and extreme in seven domains.[16] Dr. Manudahane again noted that medication had a limited effect and that Kirven's impairments would cause his absence from work more than three times a month.[17]

The ALJ acknowledged Dr. Manudahane as a treating physician[18] and assigned the April 24, 2009, evaluation "some weight" as consistent with the psychiatrist's treatment notes.[19] The ALJ gave the other two evaluations "little weight" because they contrasted sharply with the treatment notes and the record as a whole.[20]

State agency reviewing psychologists Jennifer Swain, Psy.D., and Robelyn Marlow, Ph.D., provided the only other acceptable medical source opinions weighed by the

---

[14] *Id.*

[15] *Id.* at 400-01.

[16] *Id.*

[17] *Id.* at 401.

[18] *Id.* at 30.

[19] *Id.*

[20] *Id.* at 31.

ALJ. Both opined that Kirven had no severe mental impairments.[21] The ALJ assigned these opinions "little weight" as inconsistent with the record as a whole.[22] In reality, the ALJ assigned no weight to these opinions because he found severe mental impairments at step two and imposed limitations based on those impairments at step four.

## Analysis

### 1.    The ALJ's application of the treating source rule

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

----

[21] *Id.* at 357 (Swain), 391 (Marlow).

[22] *Id.* at 32.

[23] 20 C.F.R. §§  404.1527(c)(2), 416.927(c)(2).

[24] *Id.*

-6-

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[25] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).

[26] 20 C.F.R. §§ 404.1527(d)(1) and (3), 416.927(d)(1) and (3).

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

-7-

the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[39] Second, the ALJ must identify for the record evidence supporting that finding."[40] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2) and give good reasons for that weight.[41]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[42] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[43] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[38] *Id.*

[39] *Wilson*, 378 F.3d at 546.

[40] *Id.*

[41] *Id.*

[42] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[43] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[44] *Blakley v. Commissioner of Social Security*,[45] and *Hensley v. Astrue*.[46]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[47] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[48] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.926(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.926(c)(2)(i)-(ii), (3)-(6).[49] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[50]

---

[44] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[45] *Blakley*, 581 F.3d at 406-07.

[46] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

[50] *Rogers*, 486 F.3d at 242.

-10-

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[51] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[52] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[53] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[54] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[55]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[56]

The ALJ here came up short for the same reason. She made no finding about controlling weight.[57] Rather, contrary to *Gayheart*, she collapsed the "weight analysis" into

---

[51] *Gayheart*, 710 F.3d at 376.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] Tr. at 30-31.

one step, concluding that Dr. Manudahane's opinions should receive "some"[58] or "little"[59] weight based on consistency or inconsistency with treatment notes.[60] As the *Gayheart* court expressly held, the factor of consistency of the opinion of the treating source with treatment notes is "properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight."[61]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for not giving controlling weight constitutes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[62] This failure hinders meaning judicial review.[63] The Commissioner's *post hoc* arguments on judicial review are immaterial.[64]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to whether or not controlling weight is being given to the treating source's opinion. If not,

---

[58] *Id.* at 30.

[59] *Id.* at 31.

[60] *Id.* at 30-31.

[61] *Gayheart*, 710 F.3d at 376.

[62] *Blakley*, 581 F.3d at 407.

[63] *Gayheart*, 710 F.3d at 377.

[64] *E.g.*, *Bushor v. Comm'r of Soc. Sec.*, No. 1:09-CV-320, 2010 WL 2262337, at *8 (S.D. Ohio Apr. 15, 2010); *Wooten v. Astrue*, No. 1:09 CV 981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

the ALJ must articulate "good reasons" for not assigning such weight, applying the factors set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). When the treating source's opinion does not receive controlling weight, the decision must make an assignment of lesser weight, justified by "good reasons" in terms of the factors set out in §§ 1527(c)(2)(i)-(ii), (3)-(6) and 927(c)(2)(i)-(ii), (3)-(6).

This case should be remanded for reconsideration of the residual functional capacity finding consistent with the proper application of the treating source rule as made clear in the recent *Gayheart* decision of the Sixth Circuit.[65]

## 2.     The ALJ's credibility finding

The ALJ found Kirven not credible to the extent that his statements were inconsistent with the RFC finding.[66]

As explained above, the RFC finding should be reconsidered on remand. To the extent that the ALJ incorporates additional limitations into the RFC, that will dictate reconsideration of the credibility finding as well.[67]

## Conclusion

Based on the foregoing analysis, I recommend that the decision of the Commissioner denying Kirven's applications for DIB and SSI be reversed and that this case be remanded

---

[65] *Gayheart*, 710 F.3d 375-77.

[66] Tr. at 29.

[67] *Swain*, 297 F. Supp. 2d at 994.

-13-

for reconsideration of the ALJ's findings at steps four and five of the sequential evaluation process.

As discussed above, the ALJ on remand should determine if the opinions of the treating psychiatrist, Dr. Manudahane, should receive controlling weight and explain the reasons for that determination based on the criteria set forth in the applicable regulations. If the ALJ does not give those opinions controlling weight, then he should weigh them based on the factors identified in the applicable regulations and give good reasons for the weight assigned. After reevaluating the weight assigned to the treating psychiatrist's opinions, he should reconsider the credibility finding in light of that reevaluation.

Dated: June 28, 2013            s/ William H. Baughman, Jr.
                                           United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[68]

---

[68] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).